<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| LOURENZO WITT, | : | |
| | : | |
| Plaintiff | : | Civ. No. 20-14678 (RMB-KMW) |
| | : | |
| v. | : | |
| | : | **OPINION** |
| CITY OF VINELAND, *et al.*, | : | |
| | : | |
| Defendants | : | |

APPEARANCES:

RICHARD M PESCATORE, Esq.
1055 E. Landis Avenue,
Vineland, NJ 08360
          On behalf of Plaintiff

A. MICHAEL BARKER, Esq.
Barker, Gelfand, James & Sarvas
Linwood Greene Suite 12
210 New Road
Linwood, NJ 08221
          On behalf of Defendant Cumberland County

BUMB, United States District Judge

      This matter comes before the Court upon Defendant Cumberland County's

("Cumberland County")[1] motion to dismiss Plaintiff's [Third] Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). ("Def's Mot. to Dismiss" ECF 20.)

Cumberland County moves to dismiss all claims asserted against it in Plaintiff's [Third]

---

[1] The motion to dismiss is brought solely on behalf of Cumberland County although
Richard Smith was included in the Notice of Motion. (Cumberland County Defs' Mot. to
Dismiss, ECF. 20.) Richard Smith is not a defendant in the Third Amended Complaint.

Amended Complaint dated December 10, 2020, which arose out of an incident that occurred on March 6, 2019 in the Cumberland County Jail. ("Def's Brief" ECF 20-1.)

I.      PROCEDURAL HISTORY

In his original complaint filed in the Superior Court of New Jersey, Law Division, Cumberland County on June 11, 2020, Plaintiff alleged excessive force by multiple Cumberland County Correction Officers upon his transfer to their custody from the Vineland Police Department. (Compl., ECF 1-1 at 3.) [2] In an amended complaint filed in the New Jersey Superior Court, Law Division, Cumberland County on June 25, 2020, Plaintiff removed claims against the Cumberland County Sheriff's Department. (Am. Compl., ECF 1-1 at 14.) On October 16, 2020, Plaintiff filed a second amended complaint in state court. (Second Am. Compl., ECF 1-1 at 27.) Defendants City of Vineland, Christian Morales and Kenneth Farmer filed a Notice of Removal (ECF 1) on October 20, 2020, and the case was removed from state court to the United States District Court, District of New Jersey. On December 10, 2020, Plaintiff filed his [Third] Amended Complaint in this Court. ("Third Am. Compl." ECF 15.)

Defendant Cumberland County filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) on December 23, 2020. ("Cumberland County's Mot. to Dismiss", ECF 20.) Plaintiff filed a brief in opposition to the motion to dismiss on January 19, 2021. ("Pl's Brief in Opp." ECF 30), and Defendant Cumberland County filed a reply brief in support of the motion to dismiss. ("Reply Brief" ECF 32.) For the reasons discussed below, the Court grants in part and denies in part Cumberland County's motion to dismiss.

---

[2]  Page citations to ECF refer to the page numbers assigned by the Court's electronic case filing system, CM/ECF.

II.     THE THIRD AMENDED COMPLAINT

In his Third Amended Complaint (ECF 15), Plaintiff seeks compensation for personal injuries arising out of violation of his civil rights under 42 U.S.C. § 1983, the New Jersey Civil Rights Act ("NJCRA"), and state tort law. Plaintiff alleges the following facts, taken as true for the purposes of the present motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Plaintiff alleges that on March 6, 2019, he was arrested and detained at a local convenience store by members of the Vineland Police Department based on a warrant for a minor offense. Vineland Police Officers Morales and Farmer transported Plaintiff to the Cumberland County Jail, secured with handcuffs and shackles. Once inside a secured area of the jail, Cumberland Country Correction Officers Terres, Jones, Cotto, Gibbons, Kelley, and Russell met Vineland Police Officers Morales and Farmer for the transfer of custody. Plaintiff was placed against a concrete wall with all eight officers surrounding him, while Farmer removed Plaintiff's leg shackles. Lieutenant Russel, who was agitated, threatened Plaintiff with "severe" consequences despite Plaintiff's compliance with commands. Plaintiff posed no risk of danger to the officers, nor risk of flight given the secured area.

Plaintiff was instructed to place his hand on his head as Vineland Police Officer Farmer removed his left handcuff. After Plaintiff complied, Officer Terres pepper-sprayed Plaintiff in the eyes. Cumberland County Correction Officers Russell and Cotto threw Plaintiff to the floor, and while he was lying face down, Officer Russell threw his knee into Plaintiff's back, while Officers Cotto, Terres and Giddons held him down. Officer Terres punched Plaintiff with a closed fist at least four times in the face and body. Officer Russell stomped on Plaintiff's face with combat boots and punched him in the face, while Plaintiff

remained held down by multiple officers. Upon information and belief, Officer Russell was a professional boxer. Russell told the others to cuff Plaintiff again while he was lying on the floor.

After the beating, Plaintiff lay on the floor bleeding and screaming "I can't breathe." Correction Officer Kelley and Vineland Police Officers Morales and Farmer watched the beating and made no attempts to intervene. Plaintiff suffered permanent injuries including a fractured orbital bone. The events described were captured in part by video surveillance. Plaintiff alleges the officers had no reason to restrain him or to maintain discipline. Plaintiff had previously complained about Cumberland County Correction Officers using excessive force against him on multiple occasions, and made complaints to the Internal Affairs Unit of both the Cumberland County Department of Corrections and the City of Vineland Police Department.

In Counts One and Two, Plaintiff alleges use of excessive force by Cumberland County Correction Officers Terres, Jones, Cotto, Giddons, and Russell and failure to intervene by Officer Kelley in violation of 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA") and the New Jersey Constitution.

In Count VII, Plaintiff alleges Cumberland County Correction Officers Terres, Jones, Cotto, and Giddons committed assault and battery against him. As a result, Plaintiff sustained substantial injuries including permanent physical injuries that required treatment at a cost in excess of $1,000.00, as well as emotional distress. In Counts VIII and IX, Plaintiff alleges claims of negligent infliction of emotional distress and intentional infliction of emotional distress against Cumberland County Correction Officers Terres, Jones, Cotto, Giddons, Kelley, and Vineland Police Officers Morales and Farmer.

In Count X, Plaintiff alleges that Defendants Terres, Jones, Cotto, Giddons and Kelley were acting in the scope of their employment as servants and agents of Defendant Cumberland County. Further, he alleges Cumberland County negligently, intentionally, recklessly and with deliberate indifference failed to properly screen, hire, train, supervise, investigate and discipline the defendant correction officers. Finally, Plaintiff alleges Cumberland County is vicariously liable for the negligent, intentional, malicious and indifferent, wrongful conduct of its employees. Plaintiff seeks punitive damages against all defendants in Count XII.

III.    Standard of Review:  Federal Rule of Civil Procedure 12(b)(6)

In determining a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts must "accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief "under any reasonable reading of the complaint." Mayer v. Belichick, 605 F.3d 223, 229 (3rd Cir. 2010)  (citing Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n. 3 (2007)).  To withstand a motion to dismiss, "a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Id. (quoting Phillips, 515 F.3d at 232) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n. 3 (2007)) "This 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. at 229 (quoting Twombly, 550 U.S. at 555) (citation omitted in Mayer).

Courts are not required to accept legal conclusions alleged in the complaint. See Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). The pleading must contain sufficient factual allegations to state a facially plausible claim for relief,. Gelman v.

State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)  (quoting Twombly, 550 U.S. at 556)). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230. The Court will not consider documents submitted by the parties that are outside of the allegations in the Third Amended Complaint. Arguments supported by such materials may be made in a properly filed motion for summary judgment under Federal Rule of Civil Procedure 56.

IV.    DISCUSSION

A.    42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A 10:6-1 et seq.

A plaintiff may assert a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the constitutional deprivation was caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1998); Malleus v. George, 641 F.3d  560, 563 (3d Cir. 2011).

6

The New Jersey Civil Rights Act ("NJCRA") was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured under the United States and New Jersey Constitutions. Trafton v. City of Woodbury, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) . The District of New Jersey has repeatedly interpreted the NJCRA analogously to § 1983. Id. (collecting cases). Therefore, this Court will address Plaintiff's § 1983 and NJCRA claims together, under § 1983 precedent.

B.   Whether Plaintiff's Excessive Force and Failure to Intervene Claims Arise Under the Eighth Amendment or Fourteenth Amendment

Cumberland County argues that Plaintiff's claims against it arise under the Eighth Amendment rather than the Fourteenth Amendment because Plaintiff was a convicted prisoner at the time of the alleged constitutional violations. (Def's Brief at 17-19, ECF 20-1.) According to Cumberland County, Plaintiff was detained on March 6, 2019, upon an arrest warrant for violation of probation, after he served a prison sentence as a convicted criminal, and his claims arise under the Eighth Amendment. (Id. at 18.) Plaintiff, however, contends that he was a pretrial detainee brought in on an arrest warrant for a traffic violation, and the violation of probation charges were brought months after the alleged use of excessive force on March 6, 2019. (Pl's Brief in Opp. at 12-13, ECF 30.) As a pretrial detainee, Plaintiff alleges his claims arise under the Fourth Amendment.[3]

Cumberland County, in its reply brief, argues that whether or not Plaintiff was at the Cumberland County Jail in relation to his probation does not change his status as a

---

[3]  The Fourth Amendment applies to excessive force claims by arrestees, whereas the Fourteenth Amendment governs excessive force claims against pretrial detainees. See Fuentes v. Wagner, 206 F.3d 335, 347 (3d Cir. 2000) (distinguishing Fourth and Fourteenth Amendment excessive force claims).

convicted probationer; and, as a convicted person serving an active criminal sentence, Plaintiff is only entitled to Eighth Amendment protections. (Reply Brief at 2, ECF 32.)

Cumberland County has not cited a precedential opinion that excessive force claims brought by a detainee who is a "convicted probationer" arise under the Eighth Amendment, and the Court is not aware of any such precedent.  At the motion to dismiss stage, the Court must accept Plaintiff's factual allegations as true, and Plaintiff alleges he was detained in Cumberland County Jail on March 6, 2019, upon an arrest warrant for a previous minor offense, making him a pretrial detainee. (Third Am. Compl. at 2, ECF 15.) Therefore, the Court will analyze Plaintiff's Monell claims of excessive force and failure to intervene under the Due Process Clause of the Fourteenth Amendment. See e.g. Hubbard v. Taylor, 399 F.3d 150, 153 n.2 (3d Cir. 2005).

C.     Excessive Force Claim Against Cumberland County

1.     *Standard of law: custom of excessive force*

Analysis of a  § 1983 claim begins by identifying the "exact contours of the underlying right said to have been violated" and then determining "whether the plaintiff has alleged a deprivation of a constitutional right at all." County of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). "[A] pretrial detainee claiming a substantive due process violation based on excessive force 'must show ... only that the officers' use of that force was objectively unreasonable' and not 'that the officers were subjectively aware that their use of force was unreasonable.'" Kedra v. Schroeter, 876 F.3d 424, 438 (3d Cir. 2017) (quoting Kingsley v. Hendrickson, [576] U.S. [389], 135 S. Ct. 2466, 2470, 2475 (2015).

Municipalities, such as Cumberland County, are not vicariously liable under § 1983 for the constitutional violations of their employees. Monell v. Dep't of Social Services of

City of New York, 436 U.S. 658, 694 (1978).  For municipal liability under § 1983, a plaintiff must show a policy or custom of the municipality caused the constitutional violation. Bd. of County Com'rs of Bryan County  v. Brown ("Bryan Cnty"), 530 U.S. 397, 403 (1997).

A custom, as opposed to a policy, is an act that has not been formally approved by an appropriate decision-maker, but that is so widespread as to have the force of law. Id. at 404. As with a policy claim, there must be "a direct causal link between a municipal … custom and the alleged constitutional violation." City of Canton, Ohio v. Harris, ("Canton"), 489 U.S. 378, 385(1989)). Causation is established when a plaintiff shows that a municipal action "…was taken with 'deliberate indifference' as to its known or obvious consequences." Bryan County, 520 U.S. at 407 (quoting Canton, 489 U.S. at 388.) "Evidence that a municipality 'knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers' could be sufficient to preclude summary judgment on Monell liability." Williams v. Ponik, 822 F. App'x 108, 113 (3d Cir. 2020).

2.     *Allegations of Custom*

In the Third Amended Complaint, Plaintiff alleged the following facts in support of Cumberland County's liability for the use of excessive force by Officers Terres, Jones, Cotto, Giddons, and Russell. Plaintiff alleges he and others similarly situated have been subjected to excessive force by Cumberland County Correction Officers on numerous prior occasions, including but not limited to Plaintiff being thrown down the stairs and punched in the face, Officer Cotto threatening Plaintiff with violence if he did not obey commands, and witnessing Cumberland County Correction Officers assault another inmate, who then brought a civil rights claim. (Third Am. Compl., ¶ 48.) Further, Plaintiff alleges he has

complained on multiple occasions about excessive force by Cumberland County Correction Officers to the Internal Affairs Unit of the Cumberland County Department of Corrections. (Third Am. Compl., ¶ 46.) He alleges a history of threats against supervisory personnel in Cumberland County Jail when they report, investigate or discipline officers for use of excessive force. (Id., ¶ 50.)  Additionally, Plaintiff cites to Ewing v. Cumberland County, [152 F. Supp. 3d 269 ] (D.N.J. 2015) as an example of a similar claim to his, which put Cumberland County on notice of excessive force by their employees in Cumberland County Jail. (Id.,  ¶ 51.)

To establish causation, Plaintiff alleges that despite his prior complaints and those of others similarly situated, the Internal Affairs Unit did not adequately investigate the excessive force claims, the officers were not disciplined, and the officers continued their employment. (Id., ¶¶ 47-50.) Plaintiff alleges Cumberland County followed a custom of favoring the statements of corrections officers over inmates, exonerating "rogue" corrections officers, refusing to investigate complaints, interfering with excessive force reporting, and discouraging the filing of formal complaints. (Id. ¶¶ 79, 80.)

### 3.    *Analysis of custom claim*

Cumberland County argues that Plaintiff's excessive force claim under Monell should be dismissed because there was never a finding of excessive force used on Plaintiff. (Def's Brief at 15, ECF 20-1.) Further, Defendants submit that each of Plaintiff's examples of alleged excessive force are not specific enough. (Def's Brief at 11-15, ECF 20-1.) In opposition to the motion to dismiss, Plaintiff submits that prior to discovery he set forth his own prior interactions with Cumberland County employees where he was both the victim of and the witness to excessive force, and he alleged his knowledge of Cumberland County's

history of failing to investigate and intentionally suppress investigations of excessive force. (Pl's Brief in Opp. at 12, ECF 30.) Plaintiff argues that he has alleged a plausible claim for relief. (Id. at 9-12.)

It is not necessary for Cumberland County to make a finding of excessive force by its employees before Plaintiff can bring a Monell claim. It is enough that Plaintiff has pled sufficient facts to state a Fourteenth Amendment excessive force claim against Cumberland County employees and to allege a policy or custom of Cumberland County was the moving force behind the alleged unconstitutional conduct.

It is true that Plaintiff has not indicated the dates of prior alleged incidents of excessive force against him by Cumberland County employees nor has he described the circumstances surrounding each instance. He has, however, pled that the instances were similar. (Third Am. Compl., ¶ 48.) Even after Twombly and Iqbal, Federal Rule of Civil Procedure 8(a)(2) requires only notice pleading. Iqbal, 556 U.S. at 678. The complaint "must contain sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, more than a sheer possibility that the defendant has acted unlawfully. Id. (citing Twombly, 550 U.S. at 557.) "[A]n evidentiary standard is not a proper measure of whether a complaint fails to state a claim." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) (citation omitted). Thus, a plaintiff "need not necessarily plead all details of the prior acts giving rise to the municipality's unconstitutional policy or custom," but the complaint must provide sufficient factual content for the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." Ingram v. Township of Deptford, 911 F. Supp. 2d 289, 300-303 (D.N.J. 2012).

Here, Plaintiff has alleged that he personally experienced and filed numerous complaints against Cumberland County Corrections Officers. Further, he witnessed a similar use of excessive force against another inmate, Reid, who also filed a civil rights complaint. See Reid v. Cumberland Cty., 34 F. Supp. 3d 396 (D.N.J. 2013). Plaintiff also cited to Ewing v. Cumberland County as a complaint similar to his own, where the excessive force was alleged to have occurred in 2008. The Third Circuit has stated "it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future." Beck v. City of Pittsburgh, 89 F.3d 966, 974–75 (3d Cir. 1996) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)). The numerous incidents of alleged excessive force against Plaintiff, plus the two alleged similar incidents of excessive force against Reid and Ewing are sufficient to plausibly allege a custom of excessive force to support a Monell claim against Cumberland County. See Est. of Roman v. City of Newark, 914 F.3d 789, 797–802 (3d Cir.), cert. denied sub nom. Est. of Roman v. City of Newark, New Jersey, 140 S. Ct. 82 (2019), and cert. denied, 140 S. Ct. 97 (2019) (allegations that citizen complaints against police officers were widespread but rarely acted on by the city were sufficient to plead a municipal custom and causation).

    4.    *Standard of law:  formal policies or failure to train and supervise claims*

"The Monell Court defined a municipal policy as a 'statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers.'" Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991)  (quoting Monell, 436 U.S. at 690.))  "Where the [alleged] policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those

employees will come into contact." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999) (quoting Canton, 489 U.S. at 388 ). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983." Canton, 489 U.S. 378, 389 (1989). "Additionally, 'the identified deficiency in a city's training program must be closely related to the ultimate injury;' or in other words, 'the deficiency in training [must have] actually caused' the constitutional violation." Thomas, 749 F.3d at 222 (quoting Canton, 489 U.S. at 391.) "[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not suffice. Connick v. Thompson, 563 U.S. 51, 68 (2011) (quoting Canton, 489 U.S. at 391) (alterations in Connick). "Failure to train ... municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Kline ex rel. Arndt v. Mansfield, 255 F. App'x 624, 629 (3d Cir. 2007) (citing Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (citing Bryan Cnty., 520 U.S. at 408–09).

> [F]or a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.

Carter, 181 F.3d at 357–58 (citing Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992)). A plaintiff must establish the "likelihood that the failure to train or supervise will result in the officer making the wrong decision." Walker, 974 F.2d at 299.

5.      _Allegations of formal policies and failure to train and supervise_

Plaintiff alleges that the following failures in training and supervision by Cumberland County constitute deliberate indifference to their employees using excessive force against pretrial detainees in Cumberland County Jail.

- Failure to adequately investigate complaints of excessive force

- Failure to discipline officers who used excessive force

- Continuing to employ officers who used excessive force

- Failure to have an adequate early warning system

- Failure to have an adequate policy on preparing use of force reports

- Failure to maintain training logs to show attendance

- Failure to meet state mandated timeliness for use of force training

- policies designed to prevent formal complaints of excessive force

- formally adopting a policy of allowing corrections officers to use illegal and excessive force

- failing to maintain use of force reporting procedures

- failure to adequately train regarding proper use of force

- failure to adequately monitor and evaluate performance of officers

- knowledge of "code of silence" concerning excessive force and failure to take steps to break the code by investigating and discipling the failure to report incidents of excessive force

(Third Am. Compl., ¶¶ 79-81.)

6.      _Analysis of formal policies and failure to train and supervise claims_

Cumberland County contends that Plaintiff has not alleged that it formally adopted policies or training programs that endorse the use of excessive force. (Def's Brief at 11-12,

ECF 20-1.) Plaintiff, however, alleged Cumberland County adopted policies designed to prevent formal complaints of excessive force (Third Am. Compl., ¶ 79a) and formally adopted a policy of allowing corrections officers to use illegal and excessive force (Id. ¶ 79b), Plaintiff did not, however, allege when these policies were adopted, by whom, or any content of the alleged formal policies. Without sufficient supporting facts, the Court does not find it plausible that Cumberland County formally adopted a policy for the use of excessive force against pretrial detainees or that it formally adopted a policy somehow designed to prevent official complaints of excessive force. Further, Plaintiff's allegation of Cumberland County's knowledge of a code of silence among its officers (Third Am. Compl., ¶ 81e) is merely conclusory. See e.g. Mesadieu v. Union Cty., No. CV 17-9014 (JMV/JBC), 2019 WL 2004308, at *8 (D.N.J. May 6, 2019) .

"Failure–to-train and failure-to-supervise claims 'are generally considered a subcategory of policy or practice liability.'" Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014), rev'd on other grounds sub nom. Taylor v. Barkes, 575 U.S. 822 (2015). Unlike formally adopted policies, failure to train and supervise claims may be supported with allegations of a pattern of violations that are assumed to constitute municipal policy. Canton, 489 U.S. at 389. Plaintiff has alleged a pattern of excessive force by correction officers against pretrial detainees who do not pose a flight risk or danger and are obeying commands. This establishes the first element of deliberate indifference, the County's knowledge that its correction officers will confront situations where a pretrial detainee's behavior does not require use of force but some other animosity provokes the officers to use excessive force. The second element of deliberate indifference is met by Plaintiff's allegation of a history of mishandling of such situations by the County's employees. The final element

of deliberate indifference is whether the wrong choice by employees will frequently result in constitutional violations. Here, the element is established, for purposes of the motion to dismiss, with allegations that employees who are not disciplined for the use of excessive force will continue to use excessive force in situations where it is not called for by the detainee's dangerous or disruptive conduct.

Plaintiff must also allege a sufficient nexus between the identified failures to train and supervise that plausibly caused the excessive force at issue. "As long as the causal link between the alleged policy or custom and the constitutional injury is "not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury." A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr., 372 F.3d 572, 581 (3d Cir. 2004) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir.1990)). Taken together, Plaintiff's allegations of failure to perform adequate investigations of internal affairs complaints, discouraging the filing of formal complaints, failing to maintain use of force reporting procedures, failing to discipline as a result of the failure to properly investigate, and failing to adequately monitor employee performance establish a sufficient nexus between the County's failure to supervise and the alleged resulting use of excessive force by the defendant officers on March 6, 2019.

The same, however, can not be said of Plaintiff's failure to train allegations. First, Plaintiff does not identify a particular deficiency in the actual training program, only the conclusory allegation that training was inadequate. Second, Plaintiff alleges that the state-mandated use of force training was not timely provided and Cumberland County did not maintain training attendance logs, but he does not describe the state mandated training, when the deadline was and if the training was provided sometime after the deadline, nor

does he allege the time period in which the County failed to maintain attendance logs. The failure to timely meet state requirements for use of force training and to maintain training attendance logs may support a finding of deliberate indifference, but causation can not be established without identifying when this occurred in relation to the excessive force alleged.

For these reasons, Plaintiff may proceed on his <u>Monell</u> claims based on allegations of a custom of excessive force and failure to discipline, and Plaintiff's <u>Monell</u> claims based on formally adopted policies and failure to train are dismissed without prejudice.

D.    <u>Failure to Intervene Claim Against Cumberland County</u>

Plaintiff also seeks to hold Cumberland County liable for the failure of its employee, Officer Kelley, to intervene when Officers Terres, Jones, Cotto, Giddons, and Russell beat him without justification on March 6, 2019. The Third Circuit has held that "a corrections officer who witnesses but fails to intervene in the beating of an inmate by other officers is culpable if the officer had a 'reasonable opportunity' to intervene but refused to do so." <u>A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.</u>, 372 F.3d 572, 587 (3d Cir. 2004) (quoting <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002)).

Unlike his excessive force allegations in paragraphs 46-51 of the Third Amended Complaint, Plaintiff does not allege any specific prior incidents of an officer's failure to intervene in the excessive force against a pretrial detainee by other correction officers. Plaintiff did not allege there were other officers present who had the reasonable opportunity to intervene during his prior experiences of excessive force in Cumberland County Jail. Instead, his <u>Monell</u> claims for failure to intervene are wholly conclusory. <u>See</u> <u>e.g.</u> Third Am. Compl., ¶¶79-81. The Court further notes the circumstances of the alleged excessive force, where officer Kelley was outnumbered by the officers who were beating Plaintiff, do not

support a reasonable inference that Officer Kelley had a reasonable opportunity to intervene.

Without having sufficiently alleged incidents that constitute a pattern or practice of failure to intervene in excessive force by Cumberland County Correction Officers, Plaintiff must allege Cumberland County adopted a formal policy against intervention or, alternatively, he must allege the type of "single incident" liability described by the Supreme Court in Canton. Plaintiff has not identified a formal policy that was adopted to discourage intervention in excessive force against a pretrial detainee when there is a reasonable opportunity to do so.

"In Canton, the Court left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference 'where the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.'" Connick, 563 U.S. at 63-64 (quoting Bryan Cty., 520 U.S. at 409.) The example provided by the Court was arming police officers to arrest fleeing felons without training on the use of deadly force. Canton, 489 U.S. at 390 n. 10.

It is not patently obvious that untrained correction officers will fail to intervene to stop excessive force against a pretrial detainee, given the reasonable opportunity to do so. One would expect that many individuals would naturally be inclined to intervene in an unjustified beating, regardless of the fact that the victim is a pretrial detainee accused of a crime. The situation is not the same as that where an armed and untrained officer is in pursuit of a fleeing felon, a potentially dangerous and unpredictable encounter that requires a highly skilled officer to make the right decision. Therefore, a single incident of failure to

intervene does not support an inference that a failure to train caused the unconstitutional conduct. The Court will dismiss Plaintiff's Monell claim for failure to intervene in violation of the Fourteenth Amendment without prejudice.

>        E.        The Fifth Amendment Is Inapplicable

Defendants correctly argue that Plaintiff's Fifth Amendment claims in Count V should be dismissed, because none of the defendants named in the Third Amended Complaint are federal officials. The Fourteenth Amendment, not the Fifth Amendment, governs alleged substantive due process violations by state and local government actors. See Kingsley, 576 U.S. 389, 404 (stating the Fifth Amendment applies only to federal actors). Therefore, the Court grants Cumberland County's motion to dismiss Plaintiff's Fifth Amendment claims, and dismissal is with prejudice.

>        F.        New Jersey Tort Claims

>                1.        *Intentional Tort Claims Against Cumberland County*

In Count X, Plaintiff seeks to hold Cumberland County vicariously liable under New Jersey tort law for the intentional torts of its employees. "A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." Hoag v. Brown, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007) (quoting N.J.S.A. 59:2–10.) Thus, in New Jersey, a public entity is not liable for the intentional torts of its employees. Id. (citing McDonough v. Jorda, 519 A.2d 874 (N.J. Super. Ct. App. Div. 1986), certif. denied, 540 A.2d 1282 (N.J. 1988), cert. denied sub nom., Jorda v. City of New Brunswick, 489 U.S. 1065 (1989). The Court will grant Cumberland County's motion to dismiss the intentional tort claims in Count X.

>                2.        *Negligence Claims Against Cumberland County*

Cumberland County argues that it is not vicariously liable for the negligent conduct of its employees resulting from their good faith execution of the laws. (Def's Brief at 21, ECF 20-1.) If Plaintiff proves that the defendant officers' conduct was negligent rather than willful, Cumberland County is subject to vicarious liability for the negligent conduct of its employees acting within the scope of their employment. See Wright v. State, 778 A.2d 443, 451 (N.J. 2001)  (noting the primary source of public entity liability under N.J.S.A. 59:2-2(a) is vicarious liability for injuries caused by negligence of employees acting within the scope of their employment) (quoting Comment to N.J.S.A. 59:2-2). Therefore, the Court denies Cumberland County's motion to dismiss Plaintiff's negligence claims.

With respect to liability for negligent infliction of emotional distress, Cumberland County correctly maintains that Plaintiff failed to allege a necessary element of the claim; that he manifested a physical impairment resulting from emotional distress. See e.g. Thomas v. E. Orange Bd. of Educ., 998 F. Supp. 2d 338, 355–56 (D.N.J. 2014) (citing Jablonowska v. Suther, 948 A.2d 610, 617 (N.J. 2008) (citing Falzone v. Busch214 A.2d 12, 12 (N.J. 1965)). Here, Plaintiff simply alleged emotional distress "and other damages." He does not describe a physical injury that resulted from emotional distress. (Third Am. Compl., ¶¶ 100, 110.) Therefore the Court will dismiss Plaintiff's negligent infliction of emotional distress claim against Cumberland County without prejudice.

Finally, Plaintiff's allegations of negligent hiring, training and supervising its employees are allegations of direct liability, not vicarious liability. See Ewing, 152 F. Supp. at 306–07 (citing Graham v. Huevel, 2011 WL 1256607, at *10 (D.N.J. Mar. 28, 2011); Hoag, 935 A.2d at 1230.) Plaintiff pled sufficient facts to assert Cumberland County was negligent in training and supervising its employees. Therefore, the negligent training and

supervision claims may proceed. Plaintiff, however, has not pled any deficiencies in Cumberland County's hiring practices. Therefore, the negligent hiring claim is dismissed without prejudice.

   G. <u>Punitive Damages Claim</u>

  Municipalities are immune from punitive damages under § 1983, <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981); and public entities are immune from punitive damages under the NJTCA, N.J.S.A. § 59:9-2. Therefore, the Court will dismiss Count XII of the Third Amended Complaint for punitive damages against Cumberland County.

## V. CONCLUSION

  For the reasons discussed above, the Court grants in part and denies in part the Cumberland County's motion to dismiss the claims against it in Plaintiff's Third Amended Complaint.

An appropriate order follows.


 DATE: <u>**August 6, 2021**</u>

         <u>s/Renée Marie Bumb</u>
         **RENÉE MARIE BUMB**
         **United States District Judge**