# BROWN & CONNERY, LLP

ATTORNEYS AT LAW
360 HADDON AVENUE
WESTMONT, NEW JERSEY 08108
(856) 854-8900
FAX (856) 858-4967

William F. Cook, Esq.
wcook@brownconnery.com
Direct Dial: (856) 812-2203

June 2, 2022

**Via Electronic Filing**
Honorable Matthew J. Skahill, U.S.M.J.
Mitchell H. Cohen Building
& U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

Re: **Lourenzo Witt v. County of Cumberland, et al.**
Case No.: 1:20-cv-14678- KMW-MJS
Our File No.: 20-1066

Dear Judge Skahill:

This office represents Defendants, City of Vineland, Christian Morales, and Kenneth Farmer (collectively, the "Vineland Defendants") in the above captioned matter. Please accept this letter in response to Plaintiff's May 24, 2022 letter (ECF # 70), and in accordance with the Court's April 29, 2022 Text Order (ECF # 69).

In his Third Amended Complaint, Plaintiff alleges that, on March 6, 2019, he "was arrested and detained at a local convenience store by members of the Vineland Police Department based on a warrant for a previous minor office." (ECF # 15, pg. 2) Plaintiff states that "Defendant Vineland Police Officers Morales and Farmer transported [him] to the Cumberland County Jail." (Id.) Plaintiff alleges that, while at the County Jail, Cumberland County correctional officers "beat him until he bled from his face." (Id.) Plaintiff claims that "Vineland Police Officers Morales and Farmer watched the beating from only a few feet away and made no attempt whatsoever to intervene." (Id.)

Relevant here, Plaintiff asserts a failure to intervene claim against Officers Morales and Farmer under 42 U.S.C. § 1983. He also asserts an analogous claim under the New Jersey Civil Rights Act. Finally, Plaintiff asserts a *Monell* claim against the City of Vineland. Plaintiff has settled with the Cumberland County Defendants, and has dismissed those defendants with prejudice. (ECF # 58)

First, Defendants must immediately correct Plaintiff's counsel's suggestion on Page 1 of counsel's May 24th letter that documents were not produced in accordance with the Court's April

**BROWN & CONNERY, LLP**

June 3, 2022
Page 2

29, 2022 Text Order (ECF # 69). Those "documents" are those that Plaintiff's counsel referenced during a status conference on January 14, 2022. As I explained to Plaintiff's counsel on May 18, 2022 by email:

> As far as outstanding discovery, at the last conference you referenced my statement at a status conference held on January 14, 2022 that additional discovery would be provided. Going back through my records, a substantial supplemental document production was in fact made on February 4, 2022. I did not have that information in front of me at the last conference when I stated that any outstanding discovery (that is not the subject of the dispute as to IA files) would be provided. The February 4, 2022 production would have constituted the outstanding discovery which was referenced at the January 14th conference. The Sharefile link previously provided is below.
>
> As a result, the "outstanding discovery" referenced at the January 14, 2022 conference was, in fact, produced on February 4, 2022.

Given the above, the remaining issue at this time is whether Plaintiff is entitled to full-fledged internal affairs discovery relating to excessive force complaints going back years that have nothing to do with Officers Morales or Farmer. These requests include the following:

19. Consistent with Constantino v. Atlantic City, please provide complete copies of any and all internal affairs reports/investigations regarding any and all claims of excessive use of force made against any Vineland police officer employed by the City of Vineland from 2010 to the present. This request/demand seeks all writings related thereto such as reports, emails, photographs, video or any other document related to any such investigation.

ANSWER: Objection, overbroad, irrelevant, not proportional to the case.

Timeframe is overbroad, as neither Farmer nor Morales worked from 2010 to the present. Farmer was hired in 2016, and Morales was hired in 2018.

24. Complete copies of any and all complaints made against the Defendants City of Vineland, Officer Kenneth Farmer, and/or Officer Christian Morales from the year 2014 to the present that involves allegations of excessive force, violation of civil rights, assault, battery, false arrest, or false imprisonment.

ANSWER: Objection to scope as neither officer was employer in 2014 or 2015. Farmer was hired in 2016 and Morales was hired in 2018.

The City will review its records for any such complaints.

**BROWN & CONNERY, LLP**

June 3, 2022
Page 3

> 28. A complete copy of each and every use of force report from 2014 to the present.
>
> **ANSWER:** Overbroad as to timeframe. Overbroad as it involves any officer in the VPD.
>
> **Use of force reports for Farmer and Morales to be provided.**
>
> 29. A complete copy of all reports provided to the County prosecutor from 2014 to present regarding use of force.
>
> **ANSWER:** Timeframe is irrelevant for reasons previously stated as to Farmer and Morales. Further objection as overbroad as would involve reports from incidents having nothing to do with Farmer or Morales.
>
> 30. A complete copy of any and all reports, written, or oral, of officer misconduct by citizens.
>
> **ANSWER:** Overbroad, Vague.
>
> 31. A copy of all quarterly reports summarizing the nature and disposition of all misconduct complaints received by the police department 2010 to present.
>
> **ANSWER:** Duplicative of Request No. 29.
>
> 32. A copy of all annual reports summarizing the types of complaints received and the disposition of complaints for the years 2014 to present.
>
> **ANSWER:** Duplicative of Request No. 29.
>
> 33. A complete copy of every notification of a serious injury of a detainee or citizen provided to the county prosecutor.
>
> **ANSWER:** Overbroad, Vague, absence of control.

In his May 24, 2022 letter, Plaintiff claims that he is entitled to this internal affairs information because: (1) the Cumberland County Prosecutor's Office concluded that former Defendant Michael Russell, who worked for Cumberland County at all relevant times (and not the City of Vineland), may have committed a criminal offense, although it decided not to prosecute; and (2) "The records requested relate directly to the custom, policy, and practice of the City of Vineland and its officers who looked the other way and failed to act." (ECF # 70, pg. 2) Plaintiff also claims, without providing any legal or factual basis, that: (1) the "deposition testimony of officers Farmer and Morales support production of the documents in question"; and (2) "It is the custom and practice of the City of Vineland and its officers not to follow the policy" attached to Plaintiff's letter as Exhibit D. (Id.)

7H6665502

**BROWN & CONNERY, LLP**

Plaintiff does not assert an excessive force claim against Officers Morales and Farmer. Plaintiff only asserts a failure to intervene claim against the Officers, and a *Monell* claim against the City based on an alleged custom, policy, and practice of failing to intervene. Accordingly, Plaintiff's argument that his "claims should be evaluated against the standard established in Graham v. Conner, 490 U.S. 386 (1989)" is misguided. The Supreme Court in Graham held that the Fourth Amendment's objective reasonableness standard governs claims for excessive physical force, and is thus inapplicable here. 490 U.S. at 396-97.

To establish a failure to intervene claim under § 1983, "a plaintiff must establish that the officer observe[d] or had reason to know: (1) that excessive force [was] being used; (2) that a citizen was being unjustifiably arrested; or (3) that any constitutional violation [was being] committed by a law enforcement official." Merman v. City of Camden, 824 F. Supp. 2d 581, 600 (D.N.J. 2010) (alteration in original) (internal quotation marks and citation omitted). "An officer is only liable, however, if there is a realistic and reasonable opportunity to intervene." Id. Thus, different standards govern excessive force and failure to intervene claims, and they require different proofs.

Plaintiff states that he "relies upon Judge Donio's opinion in Reid v. Cumberland County" and "Ewing v. Cumberland County, 152 F. Supp. 3d 269 (D.N.J. 2015)." (ECF # 70, pg. 2) Plaintiff does not provide any meaningful legal analysis, instead stating: "Both cases are related to the issue, and this particular Court has previously riled for the production of files, complaints, disciplinary report, excessive force reports, use of force reports, and IA investigations just like what has been requested in the instant case." (Id.)

Reid is distinguishable because the court addressed requests for complaints about excessive force, statistics of excessive force, use of force reports, and related internal affairs files in the context of an excessive force claim. Reid v. Cumberland Cnty., 34 F. Supp. 3d 396, 413-15 (D.N.J. 2013). The court did not address discovery requests in the context of a failure to intervene claim. Additionally, it is unclear why Plaintiff relies on the court's decision in Ewing, as the court decided defendants' dispositive motions and did not address discovery disputes. In short, Plaintiff has not presented any source of authority establishing that he is entitled to the requested internal affairs files as it relates to his failure to intervene claims.

Contrary to Plaintiff's claims, courts in this District do not require the mass production of internal affairs files in every § 1983 case involving a law enforcement officer. Groark v. Timek, 989 F. Supp. 2d 378, 399 (D.N.J. 2013) ("the Court's Opinion should not be read as a free pass to request all pre- and post-incident IA files in every case alleging police misconduct."); see Costantino v. City of Atl. City, 152 F. Supp. 3d 311, 335 (D.N.J. 2015) ("the Court is not ruling that in all cases municipalities must produce all of their IA files. To the contrary, the Court has repeatedly said that every case is different and each case must be evaluated on its own merits.").

For example, in Dawson v. Ocean Twp., 2011 WL 890692, at *23 (D.N.J. Mar. 14, 2011), the Honorable Douglas E. Arpert, U.S.M.J., held that plaintiff was not entitled to any

**BROWN & CONNERY, LLP**

June 3, 2022
Page 5

internal affairs files other than the internal affairs files for the defendant officers. Judge Arpert explained:

> With respect to Plaintiff's request for all internal affairs files for any other officer employed by the Township of Ocean who may have had an internal affairs complaint filed against him/her with respect to excessive force, false arrest, malicious prosecution, and demeanor complaints which might indicate violent propensities and/or untruthfulness during the five (5) years preceding the alleged incident, the Court finds that although same may be relevant based upon the facts alleged by Plaintiff, the confidentiality of internal affairs files pursuant to the Attorney General Guidelines and the assertion of governmental privilege by Defendants weigh against immediate production. Further, pursuant to Monell, Beck, Bielevicz, and Galliano v. Borough of Seaside Heights, 2007 WL 979850, at *19 (D.N.J.2007), the Court finds Plaintiff's request for all departmental internal affairs files, including all demeanor complaints which indicate violent propensities and/or untruthfulness, spanning a five (5) year period to be excessive when proffered in the abstract and absent any context.

Id. Similarly, in Deluccia v. City of Paterson, 2012 WL 909548, at *2 (D.N.J. Mar. 15, 2012), the Honorable Jose L. Linares, U.S.D.J., upheld the Magistrate Judge's reliance on Dawson in ruling that plaintiff was not entitled to internal affairs files of officers other than those who were directly involved in the underlying incident:

> Plaintiff claims that Judge Hammer improperly relied upon Dawson v. Ocean Township, Slip Copy 2011 WL 890692 (D.N.J. March 14, 2011). In Dawson, a case nearly identical to the instant matter, the Court reasoned that because of the burden that such a discovery request would place on Defendant, a privilege log was an appropriate remedy. Specifically, the Court wrote "the confidentiality of Internal Affairs filed pursuant to the Attorney General Guidelines and the assertion of governmental privilege by Defendants weight against immediate production." Id. at 23. Plaintiffs contend that Judge Hammer should have instead relied upon Torres v. Kuzniasz, 936 F. Supp. 1201 (D.N.J.1996) wherein a Judge determined that the City of Camden had to release all internal affairs records for a period of eight years in an excessive force and false arrest case. However, the Court notes that neither Dawson nor Torres is controlling upon Judge Hammer or this Court as both are magistrate decisions in District Court cases.

7H6665502

> Plaintiffs have failed to cite any binding authority for the proposition that internal affairs files for officers not directly related to the incident in question must be produced in discovery. Where there is no controlling rule, a Magistrate Judge is afforded great discretion and his decisions will only be reviewed by this Court for abuse of same. In this case, it is clear that Judge Hammer's decision is not clearly erroneous as he was guided by an analogous and valid district court decision. That Plaintiff would have preferred Judge Hammer to rely on different authority, does not constitute an abuse of discretion.

Id.

Here, Plaintiff seeks, *inter alia*, "[A]ll internal affairs reports/investigations regarding any and all claims of excessive use of force made against any Vineland police officer employed by the City of Vineland from 2010 to the present[.]"  Simply put, Plaintiff has not and cannot establish a wholesale entitlement to the internal affairs information in dispute.

This entire issue goes to Plaintiff's Monell argument.  Presumably, Plaintiff is saying that VPD allegedly: (1) had a custom of not investigating or disciplining failures to intervene by these officers; (2) that VPD's policymaker had knowledge of and was deliberately indifferent to this failure; and (3) this deliberate indifference was the moving force behind a failure to intervene in this case.  In other words, Plaintiff's argument is that these officers "got away with it before" and "knew they could get away with it again."

Plaintiff's proofs under Monell require a showing that VPD was deliberately indifferent to a known unconstitutional custom or practice.  Forrest v. Parry, 930 F.3d 93, 105–06 (3d Cir. 2019).  To go through every excessive force case in the Vineland Police Department over the past 10 years, regardless of outcome, regardless of who was there, and regardless of whether Farmer and Morales were even VPD officers, and to then review whether each of those responding officers in those cases failed to intervene in those cases, is incredibly overbroad.

As an initial matter, the requests are extraordinarily burdensome.  Defendants rely upon and incorporate by reference the Certification of Lt. Christopher Landi filed with this letter (Ex. D-1).

As explained in Lt. Landi's Certification, Lt. Landi is the VPD Internal Affairs Commander ("IA Commander").  As the IA Commander, he is intimately familiar with the New Jersey Attorney General Guidelines on Internal Affairs, known as the "Internal Affairs Policies and Procedures" (or "IAPP"), as well as the VPD's own internal affairs policies and procedures.  He is also thoroughly familiar with the maintenance of internal affairs files in the VPD.

**BROWN & CONNERY, LLP**

June 3, 2022
Page 7

Having reviewed the requests at issue in this matter, Lt. Landi explains that the requests would be unduly burdensome for various reasons, including but not limited to the amount of documents, information, and files that are involved, as well as other factors. As Lt. Landi explains:

- Under the New Jersey's Internal Affairs Policies and Procedures, the City of Vineland is required to investigate complaints of improper police conduct.

- These can be complaints brought by a citizen or by a member of the police department.

- The complaints can be written or oral.

- VPD is required to investigate every such complaint, even if the complaint is completely groundless.

- The investigations are heavily involved.

- They involve an extensive review of the underlying allegations, gathering documents and reports, reviewing any available audio and/or video footage, conducting multiple interviews (and if necessary, any follow-up interviews), coordinating where necessary with the Prosecutor's Office, completing internal affairs report(s), completing any necessary follow-up reports, and a number of other tasks.

- VPD has an Internal Affairs Department which is dedicated solely to the investigation of these complaints.

- The VPD IA Department has no more than 2-3 officers, including Lt. Landi, available to it just to conduct these existing investigations.

- Plaintiff's requests in this matter would likely involve an extensive amount of time – on top of an already-strained department committed to current investigations – to evaluate, compile, and gather files and information going back ten (10) years. This itself would place an undue burden on the department.

- Additionally, Plaintiff's requests would require the department to produce files and information that were investigated with assurances to complainants that the matter would remain confidential. These files involve countless references to personal identifying information such as dates of birth, addresses, phone numbers, and other private information of non-parties who have nothing to do with this dispute.

- For the years 2011-2020, there were over 1950 internal affairs files generated and reviewed by the VPD.

7H6665502

**BROWN & CONNERY, LLP**

June 3, 2022
Page 8

- Given current staffing and the amount of work involved, as well as the technical aspects involved in the duplication of files, it is my estimate that it would take at least a month, and likely longer, just to assemble the originals of all files involved. It is my understanding that a separate process would then need to be undertaken by counsel to redact what are likely hundreds if not thousands of references to personal identifying information.

Beyond the mere volume of cases and information involved in Plaintiff's requests, and the associated undue burden, the requests are not proportional to the needs of the case.

As explained above, there are over 1950 internal affairs files for the 2011-2020 time frame. These are broken down into various categories according to the particular allegation. Plaintiff's request would require the City to separate out the excessive force files and then, in turn, produce these actual files, regardless of whether excessive force even occurred, and regardless of whether the file had anything to do with Officers Farmer or Morales. Discovery would then, in turn, require consideration of whether the officer(s) in each of these cases observed excessive force and, if so, whether each of these officers failed to take proper steps to intervene. This would entail an analysis as to the specific circumstances of each such officer, including whether that officer was in the area of the improper use of force, the extent of the officer's knowledge at the time, and the opportunity, if any, of such officer to intervene to prevent excessive force.

Even assuming *arguendo* that there were 5, 10, or 15 other situations where *another* officer could have but did not intervene, this is not relevant if neither Farmer nor Morales had knowledge of any of those situations. If it was not in their mind, it could not be the "moving force" behind the alleged violation for purposes of Monell.

There are no facts from the depositions of these officers, or otherwise, that these officers had any knowledge of any other situations where an officer allegedly failed to intervene and such failure was tolerated. No such testimony is referenced by Plaintiff

Even more basically, this discovery is dependent on whether a fact question exists in the first instance as to whether these officers have a reasonable opportunity to intervene. It makes no sense to venture into 10 years of discovery on every excessive force case in the VPD if, fundamentally, there is no underlying fact issue as to whether these officers failed to intervene.

To the extent Plaintiff is willing to narrow his request to prior cases for the time frame of 2016-2020 where there was a complaint of a failure to intervene, as well as any cases in which an officer was disciplined for a failure to intervene, the City of Vineland is willing to consider such an accommodation.

To the extent that the above accommodation is not acceptable, the City requests that the remaining Monell discovery be bifurcated (or leave to file such a motion) so that the City can

7H6665502

**BROWN & CONNERY, LLP**

June 3, 2022
Page 9

move for summary judgment immediately as to the individual liability of Officers Morales and Farmer. If the Court decides that there are no genuine factual disputes and that there was no constitutional violation by these officers, then the Monell discovery will not be required. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (*per curiam*) (a municipal entity cannot be liable for a constitutional transgression by its agent that never occurred); Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 238 n. 15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim."). If summary judgment is denied, then these discovery issues can be revisited in a Monell discovery phase. Defendants will be able to prepare and file that summary judgment motion within 45 days.

To conclude, Plaintiff's requests are overbroad, unduly burdensome, and not proportional to the needs of the case. This is not even a case in which excessive force is alleged as to the Vineland Police Department. The requests should be rejected in favor of the reasonable accommodations proposed by the City of Vineland.

Respectfully submitted,

**BROWN & CONNERY, LLP**

*/s/ William F. Cook*
William F. Cook

WFC/asb
Enclosure
cc: Counsel of Record (*via electronic filing*)

7H6665502

# **EXHIBIT D-1**

**BROWN & CONNERY, LLP**
William F. Cook, Esq.
Andrew S. Brown, Esq.
360 Haddon Avenue
Westmont, New Jersey 08108
(856) 854-8900
*Attorneys for Defendants City of Vineland, Christian Morales, and Kenneth Farmer*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LOURENZO WITT,**<br><br>          **Plaintiff,**<br><br>     vs.<br><br>**COUNTY OF CUMBERLAND, CITY OF VINELAND, MICHAEL RUSSELL, individually and in his official capacity, EUGENE KELLEY, individually and in his official capacity, SIDNEY GIDDONS, individually and in his official capacity, RICHARD COTTO, individually and in his official capacity, MATTHEW TERRES, individually and in his official capacity, SHERMAN JONES, individually and in his official capacity, CHRISTIAN MORALES, individually and in his official capacity, and KENNETH FARMER, individually and in his official capacity,**<br><br>          **Defendants.** | Case No.: 1:20-cv-14678-KMW-MJS<br><br>**CERTIFICATION OF LIEUTENANT CHRISTOPHER LANDI REGARDING PLAINTIFF'S REQUEST FOR INTERNAL AFFAIRS FILES** |

I, Christopher Landi, of full age, certify as follows:

1.     I am a Lieutenant in the Vineland Police Department ("VPD").  I serve as the VPD Internal Affairs Commander ("IA Commander").  I make this certification pursuant to Fed. R. Civ. P. 5, Local Civ. R. 5.1, Local Civ. R. 5.2, and Local Civil R. 7.1.  I have knowledge of the contents of this certification.

1

2.      As the IA Commander, I am intimately familiar with the New Jersey Attorney General Guidelines on Internal Affairs, known as the "Internal Affairs Policies and Procedures" (or "IAPP"), as well as the VPD's own internal affairs policies and procedures.

3.      I am thoroughly familiar with the maintenance of internal affairs files in the VPD.

4.      I am informed that, in this matter, Plaintiff has made requests for the following internal affairs files and/or internal affairs information, including the following requests:

> **19.** **Consistent with <u>Constantino v. Atlantic City</u>, please provide complete copies of any and all internal affairs reports/investigations regarding any and all claims of excessive use of force made against any Vineland police officer employed by the City of Vineland from 2010 to the present. This request/demand seeks all writings related thereto such as reports, emails, photographs, video or any other document related to any such investigation.**
>
> **24.** **Complete copies of any and all complaints made against the Defendants City of Vineland, Officer Kenneth Farmer, and/or Officer Christian Morales from the year 2014 to the present that involves allegations of excessive force, violation of civil rights, assault, battery, false arrest, or false imprisonment.**
>
> **28.** **A complete copy of each and every use of force report from 2014 to the present.**
>
> **29.** **A complete copy of all reports provided to the County prosecutor from 2014 to present regarding use of force.**
>
> **30.** **A complete copy of any and all reports, written, or oral, of officer misconduct by citizens.**
>
> **31.** **A copy of all quarterly reports summarizing the nature and disposition of all misconduct complaints received by the police department 2010 to present.**
>
> **32.** **A copy of all annual reports summarizing the types of complaints received and the disposition of complaints for the years 2014 to present.**
>
> **33.** **A complete copy of every notification of a serious injury of a detainee or citizen provided to the county prosecutor.**

2

5. Simply stated, these requests would be extraordinarily burdensome to the VPD to complete for various reasons, including but not limited to the amount of documents, information, and files that are involved, as well as other factors.

6. As background, under the New Jersey's Internal Affairs Policies and Procedures, the City of Vineland is required to investigate complaints of improper police conduct. These can be complaints brought by a citizen or by a member of the police department. The complaints can be written or oral.

7. The VPD is required to investigate every such complaint, even if the complaint is completely groundless.

8. These investigations are heavily involved. They involve an extensive review of the underlying allegations, gathering documents and reports, reviewing any available audio and/or video footage, conducting multiple interviews (and if necessary, any follow-up interviews), coordinating where necessary with the Prosecutor's Office, completing internal affairs report(s), completing any necessary follow-up reports, and a number of other tasks.

9. The VPD has an Internal Affairs Department which is dedicated solely to the investigation of these complaints.

10. The VPD IA Department has no more than 2-3 officers, including myself, available to it just to conduct these existing investigations.

11. Plaintiff's requests in this matter would likely involve an extensive amount of time – on top of an already-strained department committed to current investigations – to evaluate, compile, and gather files and information going back ten (10) years. This would place an undue burden on the department.

12. Additionally, Plaintiff's requests would require the department to produce files and information that were investigated with assurances to complainants that the matter would remain confidential. These files involve countless references to personal identifying information such as dates of birth, addresses, phone numbers, and other private information of non-parties who have nothing to do with this dispute.

13. It should further be noted that, for the years 2011-2020, there were over 1950 internal affairs files generated and reviewed by the VPD.

14. Given current staffing and the amount of work involved, as well as the technical aspects involved in the duplication of files, it is my estimate that it would take at least a month, and likely longer, just to assemble the originals of all files involved. It is my understanding that a separate process would then need to be undertaken by counsel to redact what are likely hundreds if not thousands of references to personal identifying information.

I certify that the foregoing statements are true. If any of the above statements are willfully false, I am subject to punishment.

By: *Christopher Landi*
Christopher Landi

DATED: June 3, 2022