**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOURENZO WITT,<br><br>                      Plaintiff,<br><br>                      v.<br><br>CITY OF VINELAND, et al.,<br><br>                      Defendants. | Civil Action No. 20-14678 (KMW) (MJS)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

This matter comes before the Court on Defendants' motion for summary judgment. (ECF No. 95.) Plaintiff filed a response to the motion (ECF No. 97), to which Defendants replied. (ECF No. 99.) For the following reasons Defendants motion for summary judgment shall be denied.

## I.    BACKGROUND

The parties in this matter largely agree as to the background facts of this matter. Plaintiff's complaint in this case concerns a use of force incident which occurred while Plaintiff was being booked into the Cumberland County Jail by two Vineland police officers, Defendants Farmer and Morales, on March 6, 2019.[1] (*See* ECF No. 95-2 at 2; ECF No. 97-2 at 1.) In his complaint, Plaintiff essentially contends that, while being turned over to the jail following his arrest on an

---

[1] As Plaintiff previously settled his excessive force claims against a number of other Defendants, the only Defendants who remain in this case are Defendants Farmer, Morales, and the City of Vineland which employs them. This Court thus uses the term Defendants as to only these three entities. Any Defendants who have previously been dismissed from this matter will instead be referred to by name only.

outstanding warrant by Defendants, he was subjected to the use of excessive force by various members of the jail's staff, and that Defendants Farmer and Morales failed to intervene to end or prevent that use of excessive force. (*Id.*) The entire exchange in question was caught on video.[2] (*Id.*)

The video evidence (contained in exhibits D-1 and D-2 of Defendants' motion) of the incident in the County Jail in this matter reveals the following. After bringing Plaintiff into the jail, Defendants Farmer and Morales are standing with Plaintiff in a moderate size room, waiting for corrections officers of the jail to take custody of Plaintiff. During this time, Plaintiff voices complaints, casts insults at the officers, and behaves in a generally confrontational matter. A short scuffle occurs during which Plaintiff spits in the face of Defendant Morales.[3] Farmer and Morales then move Plaintiff into the corner of the room and restrain him while awaiting corrections staff. During this time, Plaintiff claims not to have spit on Morales, and headbutts an adjacent window several times while crying out as if to suggest he was being struck or attacked by the officers, but no such attack occurs. Finally, after several minutes, corrections staff arrive and Plaintiff is moved into the jail's vestibule, which is akin to a wide rectangular corridor, for the custody transfer to take place.

---

[2] Defendants spend a considerable portion of their factual recitation and record submissions on what amounts to Plaintiff's deplorable behavior during his arrest, time in the police station, time being medically cleared at a local hospital, and during his transportation to the jail. (*See* ECF No. 95-2 at 4-11.) While the events described, which Plaintiff to his credit largely admits occurred, do reflect abysmal and belligerent behavior on Plaintiff's part, those events are largely irrelevant to the actual incident at the heart of this matter and this Court need not and does not recount them here. Suffice it to say, the Vineland Police were quite patient with Plaintiff's unfortunate antics throughout his arrest and processing and the parties agree that neither Farmer, nor Morales, nor other employees of the City actually engaged in the use of any excessive force against Plaintiff throughout the night in question. (*See* ECF No. 95-2 at 1; ECF No. 97-2 at 1.)

[3] Plaintiff was ultimately charged and convicted of assault as a result of this incident. (*See* (ECF No. 95-2 at 12.)

While being brought into this room, Plaintiff continues to use foul language and deny having spit on Morales. Corrections staff take Plaintiff to a wall with handprints emblazoned on it for the purposes of removing his restraints and his intake into the jail. Corrections officers hold Plaintiff at the wall and tell him to "chill out" and that they will not "play" with him. Plaintiff pushes himself away from the wall and turns from it several times, and is redirected and held to it by two corrections officers. Plaintiff then continues to argue with officers over whether he spit on Morales and refuses to answer questions from corrections officers. Lieutenant Russel of the county jail, with whom Plaintiff is clearly familiar given their conversation and his referring to Russel by his first name, instructs the moving Defendants to remove Plaintiff's restraints, and tells Plaintiff that if he does not comply he will be "dealt with severely." Defendant Farmer removes Plaintiff's leg shackles with help from Morales while Plaintiff and Russel argue over whether Russel's warning was disrespectful. During this argument, Plaintiff on multiple occasions turns away from the wall he was instructed to face to continue arguing with Russel, requiring Morales and Farmer to change position to continue removing the leg restraints. Farmer finishes with the leg restraints while Russel and Farmer continue their exchange, stands, and steps away. Morales turns Plaintiff around from the wall and Farmer steps back up to Plaintiff so that they can begin to remove his handcuffs while the terse bickering between Plaintiff and Russel is ongoing.

Morales takes several steps back, and Farmer begins trying to undo the cuffs while two corrections officers hold Plaintiff in place. During this time, Plaintiff tells Russel to "punch [him] in [his] face" because he wants to be able to file a lawsuit. Plaintiff taunts Russel again, and Russel tells him to put each hand on his head once it is free of the cuffs while a third corrections officer steps in to help secure Plaintiff. Plaintiff is turned back to the wall and continues arguing with Russel about whether Russel will punch him if he doesn't listen to his commands. Farmer removes the restraint around Plaintiff's waist and continues the process of removing his handcuffs while

3

Plaintiff again says that he "wishes" Russel would "punch on [him]." Farmer hands Morales the waist belt from the cuff set and returns to removing the cuffs. Plaintiff is again spun away from the wall and made to face Farmer. Russel again instructs Plaintiff to place his hands on top of his head once the cuffs are removed. Plaintiff then makes several vulgar comments to Russel in response. Farmer removes the cuff from one of Plaintiff's hands and Russel again issues the order, to which Plaintiff responds "F--- you" to Russel. Russel steps forward, Plaintiff raises his hand toward the general area of his head, but pauses briefly without placing it on or behind his head.

At this point, time coded on the video as 3:46:01 a.m., another county jail corrections officer steps from behind Farmer and without warning pepper sprays Plaintiff in the face over the course of less than a second, reaching over Farmer's shoulder, and using the arm on his opposite side from Morales, who was standing several feet away from the deploying corrections officer. Russel then, at 3:46:03 a.m., grabs Plaintiff and instructs him to get on the ground, and pulls him down toward the ground while several other corrections officers move in to help restrain Plaintiff, while Farmer and Morales step back out of the corrections officers' way. At this time, Defendants Farmer and Morales begin speaking to one another, and it is not clear from the video whether either can actually see through the several officers what is happing to Plaintiff approximately eight to ten feet away on the floor. During the process of securing Plaintiff, one corrections officer quickly attempts to strike Plaintiff twice with his fist without any clear trigger at 3:46:16-18. Farmer and Morales do not appear to witness this portion of the incident as they are talking to one another.

Russel then steps towards Plaintiff, appearing to stomp on or kick his face in the process at 3:46:30, which Farmer and Morales do appear to witness. Russel leans down and tells Plaintiff to put his hands behind his back. Approximately two seconds later, Russel leans down as if to help restrain Plaintiff and then suddenly punches Plaintiff in the face, which Farmer and Morales also appear to witness. Officer Farmer steps slightly towards the group of men on the floor for a

4

moment but is waved away by a corrections officer while Russel backs away and instructs corrections officers to handcuff Plaintiff.

Officers Farmer and Morales then step back, their line of sight to Plaintiff seemingly obscured by Russel and the other officers, and begin speaking to one another again. Over the course of several fairly calmer seconds, the officers place cuffs on Plaintiff's hands. Plaintiff is turned on his side, at which point blood drips from his face onto the floor, and Plaintiff states that he cannot breathe while officers lift him to his feet, telling him he can breathe as he is talking. Plaintiff then walks out of the room while restrained by three corrections officers. A nursing staff member then enters the scene and follows the officers leading Plaintiff away out of the room. Farmer and Morales remain in the room as the video ends, after being told to "hold tight" for a few minutes. Farmer and Morales thereafter left the jail.

## II. LEGAL STANDARD

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *id.*, but must not make credibility determinations or engage in any weighing

of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014).

> "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial."

*Serodio*, 27 F. Supp. 3d at 550.

### III. **DISCUSSION**

Following the settlement of Plaintiff's excessive force claims, all that remains before the Court in this matter are Plaintiff's failure to intervene claims against Defendants Farmer, Morales, and the City of Vineland. These Defendants now move for summary judgment, arguing that Plaintiff has failed to evince facts sufficient to establish a prima facie claim of failure to intervene. Essentially, Defendants contend that neither Farmer nor Morales had a reasonable opportunity to intervene in the incident at the jail, and Plaintiff's claim therefore must fail.

A "police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force,' but only 'if there is a realistic and reasonable opportunity to intervene.'" *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (quoting *Smith v.*

6

*Mensinger*, 293 F. 3d 641, 650-51 (3d Cir. 2002)). An officer will therefore be liable for failing to stop an incident of excessive force on an individual for whom he bears responsibility where he was aware that the force incident was occurring and had a realistic ability to end or inhibit the violation in question. *Id.* The "duration of the incident is key to determining whether there was a reasonable opportunity. There may be a genuine issue of fact regarding a reasonable opportunity to intervene where the allegedly excessive force lasts about fifteen minutes . . . or where the event unfolds in multiple stages." *Id.* "By contrast, where an incident is momentary, its 'brevity' may 'defeat . . . [a] . . . failure-to-intervene claim.'" *Id.* (quoting *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018)).

Having viewed the video footage in this matter, and considering the video and other evidence, including Plaintiff's significant injuries to his eye socket and the blood left behind on the floor of the jail hall, there is certainly sufficient factual evidence in the record of this matter to permit a reasonable juror to conclude that an excessive force incident occurred during the takedown and submission of Plaintiff. That said, the entire use of force incident in this case occurred in just over thirty seconds. While that short a time frame may support a claim that officers lacked an opportunity to intervene, *See El*, 975 F.3d at 335-36 (finding no opportunity to intervene in a short incident in which a taser was employed where the defendant had only enough time to start to step forward and then step back after the taser was fired), that the incident in this matter occurred in a series of short phases with intervening moments during which a word of caution or attempts to cool the situation could have been given, that alone is not sufficient to show that Defendants had no opportunity to intervene in this case. This Court will thus consider each individual stage in turn, and then consider the matter as a whole.

Here, the first deployment of allegedly excessive force was the firing of pepper spray which occurred with little warning, while Plaintiff was acting in a somewhat confrontational manner, and

7

while neither of the two moving Defendants were in a position to expect or see the pepper spray's deployment until after it was fired. Clearly, neither had a reasonable opportunity to prevent or stop that deployment. The jail officers then moved to gain control of Plaintiff after the pepper spray, bringing him to the floor and pinning him down so he could be contained. Viewing the video, it would not be unreasonable to conclude that Defendants had little reason to believe intervention was required at this stage, as the jail officers appeared to be simply securing Plaintiff, and from the video, and their deposition testimony, it does not appear that either Farmer or Morales saw or perhaps, given Russel's positioning, could have seen the two closed fisted strikes attempted and perhaps connected by one of the corrections officers. Here, too, Plaintiff would have a significant hurdle to clear to show that a reasonable opportunity for intervention existed.

    The key point where things change, however, is when Russel moves towards Plaintiff and kicks or stomps upon his head. From their visible reactions on the video and perhaps unconscious reorientations towards the scuffle on the floor after the kick or stomp was delivered by Russel, a juror could fairly conclude that both officers witnessed the kick, recognized it as at least potentially inappropriate and, positioned themselves to be able to respond if necessary. While the kick itself was sudden and the officers may not have been able to actively engage to prevent it, within two seconds Russel again struck Plaintiff, this time bending down and punching him in the head. Here, too, Defendants Farmer and Morales clearly saw the blow and reacted to it, moving towards Russel before things calmed and they were waved back by a corrections officer. While a juror could view this footage and determine that, after choosing not to move forward and de-escalate the situation following the kick or stomp, Morales and Farmer were not close enough to be able to adequately intervene to stop Russel's subsequent punch, a reasonable juror who looked at the video in the light most favorable to Plaintiff could reasonably conclude that Defendants were aware of a need to calm the situation after the kick/stomp and should at that point have moved in to prevent any

8

further unnecessary use of force, and had they done so in the intervening moments could have prevented the final punch from landing. Ultimately this case presents a close call – to the extent that the officers had little to no indication of incoming force in each force incident considered individually, making this case seem initially similar to the situation in *El* which the Third Circuit found did not present an adequate opportunity to intervene, when the escalating incident is considered in total, and with Defendants having witnessed at the very least the kick/stomp which appeared to have been completely unnecessary from the video, it is possible for a juror to conclude that Defendants had a reasonable opportunity to react and respond and thereby prevent at the least the final punch from Russel. Given this conclusion, this Court cannot grant summary judgment as a point of disputed material fact remains – whether Defendants truly had an adequate opportunity to respond in light of the video and other evidence – and a reasonable juror could therefore find in Plaintiff's favor.

Defendants also argue that they are entitled to qualified immunity as to Plaintiff's claim. "The doctrine of qualified immunity shields government officials who perform discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, (2011)). In determining whether immunity applies, courts use a two-pronged test: "a court must decide 'whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right'[, a]nd second, the Court must determine 'whether the right at issue was clearly established at the time of [the] defendants alleged misconduct.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

9

For a claim to be clearly established, "existing precedent [must have] placed the . . . constitutional [right in] question *beyond debate.*" *Id.* at 638. With the exception of cases involving "obvious violations" of prior Supreme Court rulings, a plaintiff's claim will only be "clearly established" where "the violative nature of the *particular* conduct [was] clearly established." *James v. New Jersey State Pol.*, 957 F.3d 165, 169 (3d Cir. 2020). The conduct in question must therefore be defined at an "appropriate level of specificity," *Spady*, 800 F.3d at 638, and, when so defined, the plaintiff must identify "a case where an officer acting under similar circumstances . . . was held to have violated" the constitutional provision in question. *James*, 957 F.3d at 169-70. For the purposes of this analysis, "clearly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a robust consensus of cases of persuasive authority in the Courts of Appeals" in effect at the time of the conduct in question. *Id.* at 170.

Here, Defendants base their qualified immunity argument entirely on the premise that Plaintiff cannot show a constitutional violation because he cannot show they had a reasonable opportunity to intervene in the assault upon his person by jail staff. As this Court has explained above, because a reasonable juror could potentially find in Plaintiff's favor, that argument is insufficient to show that no constitutional violation for failure to intervene occurred in this case, and serves as no basis for qualified immunity.

Although Defendants do not present a strong or clear argument that the law regarding failures to intervene was not clearly established at the time of the incident in this case, in their reply Defendants do contend that they would not have clearly known that their failure to act would have been unlawful under these circumstances. Defendants base this argument, however, once again on their contention that they were merely present and had no reasonable opportunity to intervene in this case. That is just another means of raising the same argument this Court has already rejected above. Indeed, even had they argued that failure to intervene claims in this context

10

– a police officer witnessing other officers or corrections officer using excessive force upon a person in custody and failing to intervene to stop it – was not clearly established, such an argument would likely be futile – there is an abundance of precedent to support that such a claim was clearly established. *See El*, 975 F.3d at 335; *Ricks*, 891 F.3d at 479; *Smith*, 293 F.3d at 650-51; *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193 (3d Cir. 1995). In the absence of a clear argument that the right in question was not clearly established at the time of this incident in 2019, it appearing that the right in question *was* clearly established by that time, and Defendants having failed to show that no reasonable juror could find they had a reasonable opportunity to intervene in this incident, Defendants have failed to show they are entitled to qualified immunity in this matter.

Finally, Defendants contend that Plaintiff's *Monell* claim against the City of Vineland should be dismissed. In making that argument, however Defendants basically reiterate their argument that there was no reasonable opportunity to intervene, and if the City's officers did not fail to intervene, the City cannot be liable for their failings. Defendants' *Monell* argument is therefore essentially a reiteration of the same argument this Court has now repeatedly addressed. Because a reasonable juror viewing the facts in a light most favorable to Plaintiff *could* find that Defendants Morales and Farmer had a chance to intervene, at least after Russel's kick/stomp, Defendants' argument fails to show a basis for judgment in the City's failure.

In their reply brief, Defendants for the first time also argue that Plaintiff's *Monell* claim against the City should be dismissed as Plaintiff has failed to present adequate evidence to permit a reasonable juror to conclude that the City has either failed to train its officers or failed to properly investigate prior incidents to support the contention that the City's lax policy's resulted in the officer's alleged failures in this matter. That argument, however, was raised for the first time in a reply brief and Plaintiff did not have a full and fair opportunity to respond to it, being left only to attempt to pre-empt this previously unraised argument should it raise its head in reply. It is

axiomatic that a party "may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *D'Allessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (quoting *Int'l Raw Materials, Ltd. V. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992)); *see also Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015). A court cannot grant summary judgment on a basis raised for the first time in a reply brief to which the Plaintiff had no prior opportunity to respond. *Alston v. Forsyth*, 379 F. App'x 126; 129 (3d Cir. 2010). As this argument was raised for the first time in reply, and Plaintiff did not have a clear opportunity to respond to it, this Court cannot grant summary judgment to the City on this basis at this time. Defendants' motion for summary judgment shall therefore be denied.[4]

## IV. CONCLUSION

In conclusion, Defendants' motion for summary judgment (ECF No. 95) is denied. An appropriate order follows.

Hon. Karen M. Williams,
United States District Judge

---

[4] Because Defendants' reply *Monell* argument may have some validity were it properly briefed, this Court's denial of Defendants' motion is without prejudice to Defendants filing a second summary judgment motion solely as to this *Monell* issue and Plaintiff's alleged failure to adequately show evidence of a faulty policy or practice related to incidents of intervention to stop excessive force. If Defendants choose to file a second motion, it should be limited to just this issue, and must be filed within thirty days of the date of the order accompanying this Opinion.